[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10496

_____

A.P.A.,

                                                        Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                        Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A207-230-017

_____

Before LUCK, BRASHER, and ED CARNES, Circuit Judges.

BRASHER, Circuit Judge:

A.P.A., a native and citizen of Mexico, is a transgender woman who unlawfully immigrated to the United States as a child. After A.P.A. was convicted of driving under the influence, the Department of Homeland Security began deportation proceedings. In response, A.P.A. petitioned for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). An immigration judge denied this relief, the Board of Immigration Appeals ("BIA") affirmed, and A.P.A. has petitioned us for review.

This petition requires us to answer two questions.

First, because the BIA denied A.P.A.'s petition for asylum as untimely, we must decide whether we have jurisdiction to review that denial. We conclude that we do not. Upon determining that A.P.A.'s asylum petition failed to meet the one-year filing deadline, the BIA also concluded that it (1) did not meet the exception to the one-year deadline based on "changed" or "extraordinary circumstances," *see* 8 U.S.C. § 1158(a)(2)(D), and (2) even if A.P.A.'s transgender status was a valid changed circumstance, the petition was not filed within a "reasonable period" after that change in circumstances, *see* 8 C.F.R. § 1208.4(a)(4)(ii). The statute explicitly bars us from reviewing the BIA's decisions pertaining to an asylum application's timeliness. 8 U.S.C. § 1158(a)(3). And we held in *Chacon-Botero v. U.S. Attorney General*, 427 F.3d 954 (11th Cir. 2005), that we lack jurisdiction to review the BIA's determination that an asylum applicant failed to establish "changed circumstances." Despite

A.P.A's arguments to the contrary, we hold that the Supreme Court's decisions in *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), and *Wilkinson v. Garland*, 601 U.S. 209 (2024), did not abrogate our decision in *Chacon-Botero*. Accordingly, we lack jurisdiction to consider the petition for asylum.

Second, because A.P.A. also seeks withholding of removal and CAT relief, we must decide whether A.P.A. established a likelihood of future persecution or torture in Mexico based on transgender status. *See Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1080 (9th Cir. 2015) (holding that an alien was likely to face future torture as a transgender woman in Mexico). On this record, we conclude that substantial evidence supports the BIA's decision that A.P.A. is not likely to suffer future persecution or torture as a transgender woman in Mexico.

Accordingly, after careful review and with the benefit of oral argument, we deny the petition for review in part and dismiss in part.

## I.

A.P.A. is a native and citizen of Mexico. As a child in Mexico, a custodial uncle physically and sexually abused A.P.A. In 2002, A.P.A. unlawfully entered the United States around the age of ten. A.P.A. qualified for relief under Deferred Action for Childhood Arrivals from 2015 to 2017 but lost that status after being convicted of driving under the influence in 2017. A.P.A. was later convicted of a

second DUI and arrested and charged with possessing a controlled substance.

In February 2019, A.P.A. began to identify as a transgender woman. The government detained A.P.A. in May 2019 and began deportation proceedings. A.P.A. conceded the factual allegations for removability, and an immigration judge found A.P.A. removable under 8 U.S.C. § 1182(a)(6)(A)(i).

On September 30, 2019, seventeen years after entering the United States and nine years after reaching the age of majority, A.P.A. applied for asylum and withholding of removal under the Immigration and Nationality Act and relief under CAT. These applications were based on the physical and sexual abuse A.P.A. suffered as a child at the hands of an uncle, and A.P.A's claims of fear of future persecution and torture in Mexico as a transgender woman.

The immigration judge determined that A.P.A.'s asylum application was time barred and, alternatively, failed on the merits. A.P.A. was ineligible for asylum even if the application were timely, the immigration judge found, because A.P.A. failed to establish (1) that the childhood abuse A.P.A. experienced was based on a protected ground or (2) a well-founded fear of future persecution in Mexico as a transgender woman. The immigration judge denied A.P.A's petition for withholding of removal for failure to meet the lower threshold for asylum: establishing a well-founded fear of persecution. Finally, the immigration judge denied A.P.A.'s

petition for CAT relief because A.P.A's likelihood of future torture in Mexico was "speculative and hypothetical."

The immigration judge relied on the 2018 Mexico State Department Human Rights Report for support that no pattern or practice of persecution against transgender individuals existed in Mexico. The report recognizes that there is discrimination against LGBTI individuals in Mexico. But it also notes that there has been a "gradual increase in public tolerance of LGBTI individuals." The report states that Mexican law prohibits discrimination against LGBTI individuals, and in Mexico City, hate crimes based on gender identity carry increased penalties.

A.P.A. appealed to the BIA, which affirmed. The BIA determined that A.P.A.'s asylum claim was untimely under 8 U.S.C. § 1158(a)(2)(B) and that A.P.A. did not qualify for an exception to the filing deadline based on "changed" or "extraordinary circumstances." Alternatively, the BIA concluded that, even if A.P.A.'s new identity as a transgender woman in February 2019 qualified as a change in circumstances, A.P.A.'s seven-month delay in filing for asylum following that change in status was not a "reasonable period" under 8 C.F.R. § 1208.4(a)(4)(ii).

The BIA noted that, even where an asylum applicant is statutorily eligible, granting asylum is a discretionary decision, citing *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), *vacated*, 28 I&N Dec. 307 (BIA 2021). As to A.P.A., the BIA determined that A.P.A.'s convictions for driving under the influence and arrests for marijuana

possession did not merit a "favorable exercise of discretion for asylum."

The BIA also credited the immigration judge's determination that A.P.A. had not shown past persecution or a well-founded fear of future persecution. The BIA explained that there was no clear error in the immigration judge's finding that A.P.A. failed to present evidence of past persecution "on account of" A.P.A.'s identity as a transgender woman or the finding that A.P.A.'s childhood abuse "was a private criminal act, and [the uncle's] reason for committing such crimes is unknown." The BIA cited *Matter of A-C-A-A-*, 28 I&N Dec. 84 (A.G. 2020), *vacated*, 28 I&N Dec. 351 (BIA 2021), for the proposition that past persecution must be based on membership in a protected group. The BIA further agreed with the immigration judge that A.P.A. did not "demonstrate that there is a pattern or practice in Mexico of persecution against transgender individuals" sufficient to show fear of future persecution. Instead, the BIA noted, "the Mexican government has taken positive measures to protect the LGBTI population." The BIA denied A.P.A.'s request for CAT relief for the same reasons.

A.P.A. timely petitioned for review.

## II.

We review our subject matter jurisdiction *de novo*. *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015).

We review the BIA's decision and the decision of the immigration judge to the extent that the BIA expressly adopts or agrees

with the immigration judge's opinion. *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016). We review the BIA's factual findings under the "highly deferential" substantial evidence test. *See Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004). This standard of review applies to the BIA's determination that an applicant is statutorily ineligible for asylum or withholding of removal. *Id*. at 1028–31. Under this test, we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id*. at 1027 (quotations omitted).

## III.

A.P.A. petitions for review of three claims: asylum, withholding of removal, and CAT relief. We address each in turn.

### A.

We turn first to whether we have jurisdiction to review the asylum claim. The answer is a relatively simple, "no." But getting there requires us to navigate a labyrinth of immigration law.

We start with the timeliness and jurisdiction-stripping provisions of the Immigration and Nationality Act. The INA permits aliens to petition for asylum "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The INA also allows (but does not require) the Attorney General to consider an untimely application "if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for

asylum or extraordinary circumstances relating to the delay . . . ." *Id.* § 1158(a)(2)(D). For his part, the Attorney General has said he will exercise his discretion to review an untimely application only when the alien filed "within a reasonable period," with reasonableness being a case-specific inquiry dependent on the nature of the changed or extraordinary circumstances. *See* 8 C.F.R. § 1208.4(a)(4). Importantly, Congress has proscribed our review of an applicant's timeliness: "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)" of Section 1158(a). *Id.* § 1158(a)(3).

As a starting point, then, Section 1158(a)(3) strips us of jurisdiction to review all three of the BIA's timeliness decisions in this case. The BIA determined that A.P.A. did not file within one year. The BIA determined that A.P.A.'s newly disclosed transgender status was not a "changed" or "extraordinary" circumstance. And the BIA determined that, even if it were a "changed" circumstance, A.P.A. did not file within a reasonable period of that change. Section 1158(a)(3) bars us from reviewing any of those questions.

Before 2005, our analysis would have ended there. But the Real ID Act of 2005 amended the INA to include a limited review provision. *See* REAL ID Act of 2005, Pub. L. No. 109−13, § 106(a), 119 Stat. 231, 310 (2005). The limited review provision clarifies that "[n]othing in . . . any other provision of [the INA] (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law . . . ." 8 U.S.C. § 1252(a)(2)(D). The upshot of the REAL ID Act

is that we continue to lack jurisdiction to review the denial of an asylum application based on timeliness, 8 U.S.C. § 1158(a)(3), except to the extent a petition raises a constitutional claim or question of law.

A.P.A. argues that we have jurisdiction under the REAL ID Act to review the BIA's timeliness determinations. A.P.A. does not challenge the BIA's determination that the petition was not filed within one year. But A.P.A. argues that the BIA's other two timeliness determinations—that transgender status is not a "changed circumstance" and that, even if it were, A.P.A.'s petition was not filed "within a reasonable period" after that change—are legal questions that the BIA got wrong.

We have previously held that the "timeliness of an asylum application is not a constitutional claim or question of law covered by the REAL ID Act's changes." *Chacon-Botero*, 427 F.3d at 957. Whether an alien filed within a year is a factual inquiry, and the Attorney General is granted discretion to decide whether an alien should be excused from the one-year deadline. Matters of fact and discretion "continue to fall outside the jurisdiction of the court of appeals . . . ." *Id.* (quoting *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005)). So under *Chacon-Botero*, we do not have "jurisdiction to review a decision regarding whether an alien complied with the one-year time limit or established [changed or] extraordinary circumstances that would excuse [an] untimely filing." *Id.* (quoting *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

A.P.A. acknowledges our precedent but says that we must depart from it due to intervening Supreme Court decisions interpreting the REAL ID Act's limited review provision. More specifically, A.P.A. argues that these intervening precedents abrogate *Chacon-Botero* by establishing that the "changed circumstances" and "reasonable period" determinations are matters of law, not discretion. We don't take such arguments lightly. "The prior panel precedent rule is an essential principle, the number one ground rule, by which all of us on this Court must abide." *Johnson v. K Mart Corp.*, 273 F.3d 1035, 1066 (11th Cir. 2001) (Carnes, J., dissenting), *reh'g en banc granted*, *opinion vacated* (Dec. 19, 2001). For a later Supreme Court opinion to abrogate a prior panel's holding, "the later Supreme Court decision must demolish and eviscerate each of its fundamental props." *United States v. Dubois*, 94 F.4th 1284, 1293 (11th Cir. 2024) (cleaned up). But when "the Supreme Court never discussed our precedent and did not otherwise comment on the precise issue before the prior panel, our precedent remains binding." *Id.* (cleaned up).

Since *Chacon-Botero* was decided, the Supreme Court and this Court have handed down several important decisions relating to the REAL ID Act's limited review provision. A.P.A. says those cases have had the combined effect of overruling or abrogating *Chacon-Botero*. We disagree, but it takes some time to explain why. Over the next few pages, we first discuss the relevant post-*Chacon-Botero* precedents and the rule they create for cases like this one. Next, we explain why those precedents do not overrule or abrogate—but instead validate—our holding in *Chacon-Botero*.

The line of cases begins with *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020). There, the petitioner sought equitable tolling of a deadline for filing a motion to reopen removal proceedings. *Id.* at 225. The Fifth Circuit's precedents governing the Attorney General's handling of that petition allowed the Attorney General to toll the deadline, but only if the petitioner displayed "due diligence." *Id.* at 226; *see also Lugo-Resendez v. Lynch*, 831 F.3d 337, 343–45 (5th Cir. 2016). The BIA found that the petitioner had not exercised due diligence, so it determined that equitable tolling was not an option. *Guerrero-Lasprilla*, 589 U.S. at 226. The Fifth Circuit held that it lacked jurisdiction to review that determination because it is an issue of fact, not law. *Id.* The Supreme Court reversed, holding that whether an applicant qualified for equitable tolling was not a question of fact but instead a question answered by applying a legal standard—due diligence—to a set of facts. *Id.* at 227–30. And, the Supreme Court held, determining how a legal standard applies to a set of facts is a "question[] of law" under the limited review provision. *Id.* at 230–31.

*Guerrero-Lasprilla* thus made it critical for courts to accurately classify the INA's provisions as either (1) supplying a legal standard to be applied to a set of facts, (2) posing a question of fact, like one you'd expect a jury to answer in a court case, or (3) identifying a discretionary judgment call to be made by the Attorney General. If the relevant provision falls in bucket (1), then courts have jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(D). If the relevant provision falls in bucket (2) or (3), then jurisdiction depends on the applicability of the many other jurisdiction-stripping

provisions throughout the INA. We and the Supreme Court have experienced varying levels of difficulty when trying to decide into which bucket certain provisions of the INA belong.

Some cases are easy. Whether an alien falsely represented himself to be a United States citizen is a matter of historical fact that lands in bucket (2). *Patel v. Garland*, 596 U.S. 328, 338–40 (2022). Likewise, whether an applicant facing removal will "be harmed . . . because of his membership in a particular social group" is a bucket (2)-style finding of fact. *Edwards v. U.S. Att'y Gen.*, 97 F.4th 725, 742 (11th Cir. 2024). Whether 8 U.S.C. § 1229b(b)(2)'s unconditional requirement that an alien have suffered "extreme cruelty" requires "proof of physical abuse" is "a quintessential question of law" that falls in bucket (1) because it goes to "the meaning of a statutory" mandate. *Ruiz v. U.S. Att'y Gen.*, 73 F.4th 852, 855–56 (11th Cir. 2023). And an analysis of whether undisputed facts satisfy that statutorily imposed legal standard is also a bucket (1) legal question. *Id.* at 856.

But the law-fact-discretion trichotomy is not always so simple. Two recent cases illustrate the difficulty courts have faced navigating the post-*Guerrero-Lasprilla* landscape. *See Wilkinson*, 601 U.S. at 209; *K.Y. v. U.S. Att'y Gen.*, 43. F4th 1175 (11th Cir. 2022). Those two decisions also show courts how to handle situations when the line between a question of law and a matter of discretion is blurred.

In *K.Y. v. U.S. Attorney General*, 43 F.4th 1175, 1185–87 (11th Cir. 2022), we examined a statutory provision making aliens ineligible for asylum or withholding of removal "if the Attorney

General determines that" the applicant has "been convicted . . . of a particularly serious crime." 8 U.S.C. § 1158(b)(2)(A)(ii). We struggled between classifying the Attorney General's application of that provision as a legal question or discretionary judgment call. *See K.Y.*, 43 F.4th at 1185–87. Ultimately, we decided the provision announced a legal standard to be applied to a set of facts. *Id.*

We acknowledged in *K.Y.* that Congress "empower[ed] the Attorney General to determine" whether a particularly serious crime had been committed. *Id.* at 1186 (cleaned up). But that did not make the issue discretionary. The "particularly serious crime" requirement is a prerequisite to the Attorney General's exercise of his discretion to grant asylum or withhold removal. The INA is full of similar prerequisites that limit the Attorney General's discretion, and it is always the Attorney General's role to, in the first instance, assess whether those prerequisites have been satisfied. To hold that the word "determine" alone was sufficient to make an issue discretionary would have shortchanged the statutory prerequisites' limits on executive discretion and made it "difficult to envision any action by the Attorney General that would not" be considered discretionary. *Id.* (cleaned up). That would cause tension with *Guerrero-Lasprilla*, which emphasized the presumption favoring judicial review of agency action. *See id.* at 1186–87. Accordingly, we required "clear and convincing evidence of congressional intent to" leave a particular decision to the discretion of the Attorney General when doing so would "preclude judicial review." *Id.* (cleaned up).

Finally, there is *Wilkinson*. The relevant statute there provided that the "Attorney General may cancel removal of . . . an alien . . . if the alien . . . establishes that removal would result in exceptional and extremely unusual hardship to the alien's" U.S. citizen or lawful resident family members. 8 U.S.C. § 1229b(b)(1)(D). *Wilkinson* required the Supreme Court to classify the "exceptional and extremely unusual hardship" standard as either a legal question or a discretionary judgment call. The Court's method of answering that question echoed our *K.Y.* decision in important ways.

The Court in *Wilkinson* began by noting the difference between, on the one hand, a statutory prerequisite that must be met before the Attorney General can exercise discretion and, on the other hand, the ultimate decision by the Attorney General of how to exercise that discretion. *See* 601 U.S. at 218. The Court then moved on to deciding whether the statutory language in that case—the "exceptional and extremely unusual hardship" requirement—was itself discretionary or imposed a legal standard. Baked into the Court's analysis is the same presumption we adopted in *K.Y.*—a statutory prerequisite to the exercise of discretion is not itself discretionary unless there is evidence to the contrary. The Court in *Wilkinson* thus started from the position that the Attorney General's assessment of "exceptional and extremely unusual hardship" was not discretionary, *see id.* at 218, 221–22, and then looked for evidence to rebut that presumption, *see id.* at 222–25. Finding none, the Supreme Court held that "exceptional and extremely unusual hardship" is a legal standard that must be applied to the facts of a given case. *Id.* at 212, 222–23. Thus, the Court held that courts

have jurisdiction to review the Attorney General's application of that standard to the undisputed facts of a case. *Id.*

A.P.A. argues that the foregoing precedents overruled or abrogated *Chacon-Botero*. The strongest version of that argument is that (1) *Guerrero-Lasprilla* (as applied by us in *K.Y.* and by the Supreme Court in *Wilkinson*) creates a presumption that a prerequisite to the Attorney General's exercise of discretion is not itself discretionary, (2) the presumption can be overcome only by clear and convincing textual evidence that the statutory prerequisite was also left to the discretion of the Attorney General, (3) a statute empowering the Attorney General to "determine" whether the prerequisite has been met is not alone sufficient evidence, and (4) *Chacon-Botero*'s holding rested on 8 U.S.C. § 1158(a)(3)'s calling the timeliness analyses "determination[s] of the Attorney General."

We reject this argument. As we've noted, overcoming the prior panel precedent rule is onerous. It requires that the subsequent precedents either resolved the "precise issue before the [*Chacon-Botero*] panel" or otherwise "demolish[ed] and eviscerate[d]" *Chacon-Botero*'s "fundamental props." *Dubois*, 94 F.4th at 1293. A.P.A. hasn't carried that burden here.

For starters, and to get the obvious out of the way, none of those precedents "comment[ed] on the precise issue before the [*Chacon-Botero*] panel . . . ." *Id. Chacon-Botero* did not involve considerations of due diligence, particularly serious crimes, or a statutorily imposed hardship standard. Other precedents deciding that those issues are matters of law do not conflict with *Chacon-Botero*'s

holding that timeliness considerations under 8 U.S.C. § 1158(a)(2)(D) are matters of discretion. These differences alone are sufficient grounds for us to follow *Chacon-Botero* under the prior panel rule. *See Pacheco-Moran v. Garland*, 70 F.4th 431, 438 (8th Cir. 2023) (distinguishing *Guerrero-Lasprilla* because it "did not involve the one-year time bar in § 1158(a)(2)").

But there's more. The foregoing precedents in no way "demolish[ed] and eviscerate[d]" *Chacon-Botero*'s "fundamental props." *Dubois*, 94 F.4th at 1293 (cleaned up). Translated into post-*Guerrero-Lasprilla* terminology, the core holding of *Chacon-Botero* is that the existence of changed circumstances and the reasonableness of the applicant's delay are discretionary judgment calls left to the Attorney General. No intervening precedent undermines that conclusion. Quite the opposite: they confirm that the panel in *Chacon-Botero* got it right.

Let's look again at the text. An untimely asylum application "may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General . . . the existence of changed circumstances which materially affect the applicant's eligibility for asylum . . . ." 8 U.S.C. § 1158(a)(2)(D). We thus see the two features that were present in all the foregoing cases—the Attorney General's discretion to grant relief (considering a late application) and a prerequisite that must be met before he can exercise that discretion (the existence of "changed circumstances"). But even if we begin by presuming that a "changed circumstances" determination is not discretionary, Section 1158(a)(2)(D) contains clear textual evidence of

discretion that overcomes that presumption—something that was lacking in *Guerrero-Lasprilla*, *Wilkinson*, and *K.Y.* Specifically, Congress did more than just say the Attorney General must "determine" whether "changed circumstances" exist. Congress tied the existence of "changed circumstances" to the "satisfaction of the Attorney General." With those words, Congress made the Attorney General the only person able to decide whether the prerequisite has been met.

It is hard to imagine stronger textual evidence of discretion than the statute's direction that the standard must be met to the "satisfaction of the Attorney General." Indeed, in *Wilkinson*, the Supreme Court identified four examples of statutory text that, it said, clearly display an intent to create a discretionary standard, which would remove jurisdiction from the courts of appeals. Two of these exemplary provisions use *exactly the same* operative language as Section 1158(a)(2)(D)—"if it is established *to the satisfaction of* the Attorney General." *See Wilkinson*, 601 U.S. at 224 (first quoting 8 U.S.C. § 1182(h)(1)(B), then quoting 8 U.S.C. § 1182(i)(1)) (emphasis added). Far from undermining *Chacon-Botero*, the Supreme Court in *Wilkinson* confirmed that we were correct to dismiss for lack of jurisdiction.

In short, *Chacon-Botero* controls this case and establishes that we lack jurisdiction over the BIA's determinations under Section 1158(a)(2)(D). The "changed circumstances" requirement in Section 1158(a)(2)(D) is not a "question of law" reviewable under Section 1252(a)(2)(D) but is instead a discretionary matter insulated

from judicial review by Section 1158(a)(3). Because 8 C.F.R. § 1208.4(a)(4) is simply the Attorney General's chosen method of deciding whether he is "satisf[ied]" with an applicant's "demonstrat[ion]" under 8 U.S.C. § 1158(a)(2)(D), it necessarily follows that the BIA's "reasonable period" determination under 8 C.F.R. § 1208.4(a)(4) is also a non-legal and unreviewable matter of discretion. We lack jurisdiction to review the BIA's determination.

## B.

We turn now to A.P.A.'s claim for withholding of removal. To prevail on a claim for withholding of removal, the applicant must show that his or her "life or freedom would be threatened" as part of a protected group. 8 U.S.C. § 1231(b)(3)(A). The applicant "bears the burden of demonstrating that he [or she] more-likely-than-not would be persecuted or tortured upon his [or her] return to the country in question." *Mendoza*, 327 F.3d at 1287. Proof of past persecution creates a presumption that the noncitizen's "life or freedom would be threatened upon return." *Id.* To qualify for withholding of removal based on past persecution, the persecution must bear some nexus to the noncitizen's membership in a protected group. *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1373–74 (11th Cir. 2021).

The BIA found no clear error in the immigration judge's finding that A.P.A. did not suffer past persecution based on membership in a protected group. The immigration judge found that A.P.A. credibly testified to physical and sexual abuse as a child. However, nothing in the record suggests this childhood abuse

relates to or bears a "nexus" to A.P.A. identifying as a transgender woman over twenty years later. *See id.* at 1374.

For its part, the BIA agreed with the immigration judge. A.P.A. contends that the BIA erred in relying on two withdrawn Attorney General opinions in its discussion of past persecution: *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018), *vacated*, 28 I&N Dec. 307 (BIA 2021), and *Matter of A-C-A-A-*, 28 I&N Dec. 84 (A.G. 2020), *vacated*, 28 I&N Dec. 351 (BIA 2021). But the BIA cited these opinions for uncontroversial principles that were not undermined by the opinions' withdrawal. Specifically, the BIA cited *Matter of A-B-* for the principle that granting asylum is a discretionary decision, and it cited *Matter of A-C-A-A-* for the proposition that past persecution must bear a nexus to the alien's membership in a protected group. Both principles are well-established beyond the vacated opinions. *See* 8 U.S.C. § 1158(b)(1) ("The Secretary of Homeland Security or the Attorney General *may* grant asylum . . . ." (emphasis added)); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (The INA "authorizes the Attorney General, *in his discretion*, to grant asylum." (emphasis added)); *Jathursan*, 17 F.4th at 1373–74 (requiring past persecution to bear a nexus to the alien's protected group). Because the BIA cited the vacated Attorney General opinions for basic legal propositions that have not been disturbed, we cannot say that the BIA's reconsideration is necessary.

The BIA also found that A.P.A. did not establish a likelihood of future persecution. One way an applicant can establish that he or she has a well-founded fear of future persecution is by

demonstrating that he or she is being removed to a country where there is "a pattern or practice of persecution of a group of which he [or she] is a member." *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1290–91 (11th Cir. 2020) (quoting *Mehmeti v. U.S. Att'y. Gen.*, 572 F.3d 1196, 1200 (11th Cir. 2009)). Establishing a "pattern or practice" of persecution is a demanding standard: mistreatment of similarly situated persons must be "extreme and pervasive." *Id.* at 1291. Some instances of violence or discrimination against the protected group is not enough. For instance, in *Lingeswaran v. U.S. Attorney General*, we denied a petition challenging the BIA's pattern and practice analysis where—despite evidence of extrajudicial killings, disappearances, and kidnappings—violence in the country of origin had "fallen considerably," and the government had made "recognized efforts to improve the situation." *Id.*

In ruling on A.P.A.'s petition, the BIA found that the record did not establish a pattern or practice of persecution of transgender individuals in Mexico. As to this finding, A.P.A. contends that: (1) the BIA erroneously assessed persecution against the broader LGBTI community instead of transgender individuals specifically, and (2) the BIA incorrectly assessed the country conditions in Mexico by failing to consider evidence of violence against transgender women. We disagree.

First, A.P.A.'s contention that the BIA focused on the wrong protected group is unsupported by the record. Although the BIA mentions conditions affecting the broader LGBTI community in Mexico (as does much of the evidence A.P.A. proffered), the BIA

expressly considered the conditions affecting transgender individuals.

Second, on this record, substantial evidence supports the BIA's determination that A.P.A. did not establish a pattern or practice of persecution against transgender women in Mexico. The BIA considered instances of violence against transgender individuals, but credited evidence to the contrary that mistreatment of transgender individuals was not so "extreme and pervasive" to meet the demanding pattern or practice of persecution standard. *See id.* We cannot say that the BIA erred in considering this evidence or Mexico's movement towards accommodating transgender individuals. *See id.*

A.P.A.'s arguments find some support in the Ninth Circuit's decision in *Avendano-Hernandez v. Lynch*, 800 F.3d 1072, 1080−82 (9th Cir. 2015). There, the Ninth Circuit reversed the BIA's finding that an alien was not likely to face future torture as a transgender woman in Mexico. But we believe *Avendano-Hernandez* is distinguishable in two respects.

First, the court emphasized in *Avendano-Hernandez* that the alien had experienced past persecution as a transgender woman in Mexico and had been tortured based on that transgender status. *Id.* at 1079−80. Indeed, the court noted that "past torture is ordinarily the principal factor on which [the court will] rely when an applicant who has been previously tortured seeks relief." *Id.* at 1080 (quoting *Nuru v. Gonzales*, 404 F.3d 1207, 1218 (9th Cir. 2005)) (alteration omitted). By contrast, A.P.A. has never lived as a transgender

woman, and has not faced persecution due to transgender status, in Mexico.

Second, the country conditions evidence in this case is different from the evidence in *Avendano-Hernandez*. The Ninth Circuit decided *Avendano-Hernandez* nine years ago, relying largely on the petitioner's own experiences and the declaration of an expert witness, which apparently reflected a different situation in Mexico for transgender individuals than the record here. *See id.* at 1081−82. The "[c]ountry conditions evidence" in *Avendano-Hernandez* established "that police specifically target the transgender community for extortion and sexual favors, and that Mexico suffers from an epidemic of unsolved violent crimes against transgender persons." *Id.* at 1081. By contrast, the 2018 Country Conditions Report in the record here describes significant improvements for transgender individuals in Mexico. For example, the law prohibits discrimination against LGBTI individuals, and Mexico City has increased the penalties for hate crimes based on gender identity.

To be sure, the record evidence also suggests that there is remaining societal discrimination against transgender persons in Mexico, which includes violence and unsolved crimes. But, as we have explained, establishing a pattern or practice of persecution is a high bar. *See Lingeswaran*, 969 F.3d at 1291. On this record, we cannot say the BIA's finding that there is not a pattern or practice of persecution is unsupported by substantial evidence.

*C.*

As for A.P.A.'s third claim—relief under the CAT—A.P.A.'s burden for eligibility is "higher . . . than for asylum eligibility." *Id.* at 1293. A.P.A. must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Id.* (quoting 8 C.F.R. § 208.18(c)(2)). For the same reasons that we cannot reverse the BIA's decision on withholding of removal, we cannot say the BIA erred in denying CAT relief.

**IV.**

We **DENY** the petition in part and **DISMISS** it in part.