**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 23-12860

Non-Argument Calendar

————————————————

DIANA KATHERINE DIAZ GONZALEZ,
WILLAM GIOVANNI CHAPARRO VELASQUEZ,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————————

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-967-159

————————————————

————————————————

No. 24-10542

Non-Argument Calendar

————————————————

DIANA KATHERINE DIAZ GONZALEZ,

2                    Opinion of the Court                    23-12860

WILLAM GIOVANNI CHAPARRO VELASQUEZ,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-967-159

_____

Before JORDAN, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

In this consolidated appeal, Diana Katherine Diaz Gonzalez and William Giovanni Chaparro Velasquez seek review of two orders by the Board of Immigration Appeals. The first order affirmed the immigration judge's denial of Ms. Diaz Gonzalez's application for asylum and withholding of removal under various provisions of the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.* The second order denied Ms. Diaz Gonzalez's and Mr. Chaparro Velasquez's motion to reopen removal proceedings.[1]

As to the first order, Ms. Diaz Gonzalez argues that the Board erred in concluding that she failed to show that she suffered

_____

[1] Mr. Chaparro Velasquez, Ms. Diaz Gonzalez's husband, is a derivative beneficiary of Ms. Diaz Gonzalez's asylum application.

past persecution because of her political opinion. She also contends that the Board abused its discretion in determining that she waived any challenge to the immigration judge's finding that she failed to establish a well-founded fear of future persecution. As to the second order, Ms. Diaz Gonzalez and Mr. Chaparro Velasquez assert that the Board abused its discretion in denying their motion.

After reviewing the parties' briefs and the record, we deny the petitions.

## I

Ms. Diaz Gonzalez[2] is a citizen of Colombia who legally entered the United States on a B-2 visa. Ms. Diaz Gonzalez applied for asylum or withholding of removal based on political opinion while in the United States. Several years later, after overstaying her visa, the Department of Homeland Security served her with a notice to appear charging her as removable for remaining in the United States longer than authorized, in violation of 8 U.S.C. § 1227(A)(1)(B).

Ms. Diaz Gonzalez conceded the charge of removability and removal proceedings were held. During those proceedings, Ms. Diaz Gonzalez testified in support of her application for asylum, statutory withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhu-

---

[2] We refer to Ms. Diaz Gonzalez individually here because only she applied for asylum.

man, or Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).

Ms. Diaz Gonzalez stated that when she lived in Colombia, she and her parents were members of the Colombian Conservative Party. She also volunteered to assist mothers and children who were displaced by the violence of the Revolutionary Armed Forces of Colombia ("FARC"). Through this work, Ms. Diaz Gonzalez would collect necessities for the children, while advocating against the FARC.

Ms. Diaz Gonzalez testified to two incidents of the FARC persecuting her and causing her to leave Colombia. During the first incident, a man and a woman approached Ms. Diaz Gonzalez from behind as she was walking down the street. The man called out her name and then the woman began hitting her in the face while insulting her and accusing her of "getting involved in their work." Eventually bystanders intervened after Ms. Diaz Gonzalez fell and the couple fled. Later that evening, Ms. Diaz Gonzalez received a call from an individual who identified himself as a member of the FARC. After acknowledging the attack earlier that day, the caller warned Ms. Diaz Gonzalez that they "were not playing games," and that "[n]ext time it would be worse." The caller also noted that he was following his commander's orders. Ms. Diaz Gonzalez testified that she had received an anonymous phone call the month before the attack making similar threats.

During the second incident, a man and a woman approached Ms. Diaz Gonzalez as she was leaving a supermarket.

The man put something hard against her back and told her that they were "just following orders from their command." Fearing that she would be kidnapped and murdered, Ms. Diaz Gonzalez screamed for help to a security guard. The guard shot his gun in the air in response. The man grabbed Ms. Diaz Gonzalez by the neck and threatened to kill her, while the woman told her partner to shoot Ms. Diaz Gonzalez. When the guard tried to intervene, the man released Ms. Diaz Gonzalez and the couple fled.

Ms. Diaz Gonzalez did not report either incident to the police because she feared that the FARC would retaliate against her.

The immigration judge issued an oral decision denying Ms. Diaz Gonzalez's application for asylum, statutory withholding of removal, and relief under the CAT. The immigration judge deemed Ms. Diaz Gonzalez credible but found that she failed to establish her past persecution claim. Although she was persecuted, the immigration judge found that it had not been on account of her political opinion. Rather, the FARC persecuted her because she interfered with their recruitment efforts.

The immigration judge also found that Ms. Diaz Gonzalez failed to show that she had an objectively reasonable, well-founded fear of future persecution assuming she established her claim of past persecution. Alternatively, the immigration judge found that the government rebutted any fear of future persecution by pointing to a fundamental change in Colombia's circumstances—namely, the disbandment and reorganization of the FARC as a political party.

Finally, the immigration judge found that Ms. Diaz Gonzalez failed to offer credible testimony that she or her husband would be tortured by or with the consent of the Colombian government were they to return to Colombia.

The Board dismissed Ms. Diaz Gonzalez's subsequent administrative appeal, affirming the immigration judge's determination that Ms. Diaz Gonzalez failed to establish a nexus between her persecution and her political opinion. It also concluded that Ms. Diaz Gonzalez failed to dispute the immigration judge's findings on her claim of fear of future persecution and denial of her claim under the CAT. The Board declined to address the immigration judge's alternative rulings.

## II[3]

We first address the Board's order on Ms. Diaz Gonzalez's asylum application. The Board affirmed the immigration judge's finding that Ms. Diaz Gonzalez failed to show past persecution based on her political opinion. It also concluded that Ms. Diaz Gonzalez waived any dispute to the immigration judge's conclusion that she failed to establish an objectively reasonable well-founded fear of returning to Colombia.

---

[3] Ms. Diaz Gonzalez did not appeal to the Board the immigration judge's denial of her claim for relief under the CAT, nor did she raise the issue on appeal before this court. Therefore, the issue is deemed abandoned. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) (en banc).

## A

We review the Board's decision as a final agency decision and any portion of the immigration judge's decision that the Board "expressly adopts or agrees with[.]"  *A.P.A. v. U.S. Att'y Gen.*, 104 F.4th 230, 236 (11th Cir. 2024).  We review legal conclusions *de novo* and factual findings for substantial evidence.  *See Lopez-Martinez v. U.S. Att'y Gen.*, No. 23-10105 & 23-12058, --- F.4th ----, 2025 WL 2234162, at *3 (11th Cir. Aug. 6, 2025).  Under the substantial evidence standard, "we must affirm the [Board's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *A.P.A.*, 104 F.4th at 236 (citation and internal quotation marks omitted).

To establish eligibility for asylum, an applicant "must, with specific and credible evidence, establish (1) past persecution on account of a statutorily listed factor, or (2) a well-founded fear that the statutorily listed factor will cause such future persecution."  *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) (internal quotation marks omitted).  *See also* 8 C.F.R. § 1208.13(a)–(b).  As relevant here, political opinion is a statutorily listed factor.  *See* § 1208.13(b)(1).  The applicant bears the burden of showing that her political opinion "was or will be at least one central reason for persecuting the applicant."  8 U.S.C. § 1158(b)(1)(B)(i).  Stated differently, "the persecution must bear some nexus to the noncitizen's" political opinion.  *See A.P.A.*, 104 F.4th at 241.

Ms. Diaz Gonzalez disputes the Board's determination that she failed to show past persecution based on her political opinion.

But the Board did not err in its determination.  Ms. Diaz Gonzalez failed to show that she communicated a political viewpoint to the FARC.  And her assertion that the FARC imputed a political opinion to her—based on her role as a community leader—does not overcome the deference we afford to the Board's findings.  *See Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350–51 (11th Cir. 2009).  Stated differently, the evidence does not "compel" a contrary finding.  *See Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1230 (11th Cir. 2005).  Moreover, "[e]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas . . . does not constitute evidence of persecution based on a statutorily protected ground." *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1258 (11th Cir. 2006).

Because substantial evidence showed that the FARC persecuted Ms. Diaz Gonzalez because she interfered with recruitment efforts, the Board did not err in determining that she was not persecuted on account of her political opinion.  *See Ruiz*, 440 F.3d at 1258.

**B**

We review the Board's finding that an argument has been waived for abuse of discretion.  *See Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1144–45 (11th Cir. 2010) ("The [Board] has discretion to summarily dismiss claims where the record clearly indicates that the applicant has waived her right to appeal.").

Although an applicant "who establishes past persecution is presumed to have a well-founded fear of future persecution,"

*Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1193 (11th Cir. 2021), she may "establish a well-founded fear of persecution without proving past persecution," *Kazemzadeh*, 577 F.3d at 1352.  To do so, "the applicant must prove (1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Martinez v. U.S. Att'y Gen.*, 992 F.3d 1283, 1293 (11th Cir. 2021) (citation and internal quotation marks omitted).  If an applicant cannot meet the well-founded fear standard, she generally is ineligible for either asylum or withholding of removal.  *See Kazemzadeh*, 577 F.3d at 1352.

Ms. Diaz Gonzalez argues that she did dispute to the Board the immigration judge's findings as to the well-founded fear standard and therefore the Board erred in deeming the issue waived.  The Board did not abuse its discretion in deeming the issue waived.  Although Ms. Diaz Gonzalez discussed the immigration judge's findings, those arguments focused solely on whether the government successfully rebutted the well-founded fear presumption.  Yet, she failed to argue that her fear that the FARC would harm her if she returned to Colombia was objectively reasonable.  Her arguments were thus insufficient to provide the Board with notice of her dispute and are not preserved on appeal.  *See Laipaix*, 605 F.3d at 1145.

Therefore, the Board did not abuse its discretion in determining that Ms. Diaz Gonzalez failed to properly appeal the immigration judge's finding that she failed to establish a well-

founded fear of future persecution on account of her political opinion.

### III

We next address the Board's order on the motion to reopen removal proceedings. The Board concluded that Ms. Diaz Gonzalez and Mr. Chaparro Velasquez had failed to establish a prima facie case that their qualifying relative—their daughter—would face exceptional and extremely unusual hardship if removed to Colombia.

### A

Following the Board's dismissal of her appeal, Ms. Diaz Gonzalez and Mr. Chaparro Velasquez moved to reopen their removal proceedings to apply for cancellation of removal pursuant to 8 U.S.C. § 1229b(b)(1). They argued that the relief was not previously available to them and relied on their daughter, a United States citizen, as the qualifying relative to establish the exceptional and extremely unusual hardship standard.

Ms. Diaz Gonzalez's and Mr. Chaparro Velasquez's motion explained that their daughter was born with craniosynostosis, a defect in her skull that constrained brain growth and caused intracranial pressure. They argued that the daughter's condition required ongoing medical treatment, including a yearly eye examination to monitor the intracranial pressure and related optic nerve swelling. Among the evidence establishing their daughter's condition, Ms. Diaz Gonzalez and Mr. Chaparro Velasquez submitted a letter from a pediatric ophthalmologist who had evaluat-

ed the daughter. The letter noted that the daughter no longer suffered from swelling of her optic nerve, but that it was "very important" for her to have annual eye examinations to monitor the condition.

The Board denied the motion to reopen. As to the exceptional and extremely unusual hardship element, the Board concluded that the motion failed to "articulate how the hardship to [the daughter] [would] be 'substantially beyond' the hardships ordinarily associated with a parent's removal." The Board noted that the motion failed to explain, for example, "whether and to what extent there is any family or community-level support in Colombia, [the daughter's] language and educational circumstances, and the availability of obtaining annual eye exams in Colombia[.]"

**B**

We review the Board's denial of a motion to reopen for an abuse of discretion. *See Ali v. U.S. Att'y Gen.*, 443 F.3d 804, 808 (11th Cir. 2006). Our review "is limited to determining whether there has been an exercise of administrative discretion and whether the matter of exercise has been arbitrary or capricious." *Id.* (quotation marks omitted).

The Attorney General has the discretion to cancel the removal of a non-permanent resident if the resident: (1) has been present in the United States continuously for ten years; (2) is of good moral character; (3) has not committed any disqualifying criminal offenses; and (4) shows that a citizen or legal permanent

resident qualifying relative will suffer exceptional and extremely unusual hardship. *See* 8 U.S.C. § 1229b(b)(1). "[T]o the extent that a claim is based on the health of a qualifying relative, an applicant needs to establish [1] that the relative has a serious medical condition and, [2] if he or she is accompanying the applicant to the country of removal, that adequate medical care for the claimed condition is not reasonably available in that country." *Lopez-Martinez*, 2025 WL 2234162, at *7 (quoting *Matter of J-J-G-*, I. & N. Dec. 808, 811 (B.I.A. 2020)).

"[O]n a petition for review of a final order of removal, our jurisdiction extends to immigration authorities' conclusion that an applicant for cancellation of removal hasn't satisfied § 1229b(b)(1)(D)'s exceptional-and-extremely-unusual-hardship standard." *Id.* at *1. "[A] determination regarding § 1229b(b)(1)(D)'s hardship standard is reviewable for substantial evidence." *Id.* at *3.

Ms. Diaz Gonzalez and Mr. Chaparro Velasquez argue that they presented sufficient evidence to satisfy § 1229b(b)(1)(D)'s exceptional-and-extremely-unusual-hardship standard. Under the deferential substantial evidence standard, we conclude that the Board did not err in denying the motion to reopen. *See A.P.A.*, 104 F.4th at 236. The Board properly considered the evidence before it and concluded that the motion failed to establish that there was inadequate medical care for the daughter's condition in Colombia. *See Lopez-Martinez*, 2025 WL 2234162, at *7. For example, the Board noted that Ms. Diaz Gonzalez and Mr. Chaparro

Velasquez failed to explain the family and community support available in Colombia or whether there was access to annual eye exams in Colombia.

Therefore, the Board did not abuse its discretion in denying Ms. Diaz Gonzalez's and Mr. Chaparro Velasquez's motion to reopen for failure to satisfy § 1229b(b)(1)(D)'s hardship standard.

## IV

We deny the two petitions.

**PETITIONS DENIED.**