[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12398

Non-Argument Calendar

_____

MARVIN ANTONIO LAGUNA RIVERA,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-854-722

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Marvin Laguna Rivera, a native and citizen of Nicaragua, petitions us to review an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). Laguna Rivera's claim is that his and his family's involvement in political activities against Daniel Ortega's government in Nicaragua puts his life in danger if he were to return to Nicaragua. The IJ found that Laguna Rivera's examples of persecution to his family members decades ago were too tenuously related to a future threat of persecution to himself, and that his testimony about recent threats was not credible. The BIA upheld the IJ's determination.

On appeal, Laguna Rivera argues that: (1) we have jurisdiction to review the agency's denial of his asylum petition, despite its untimeliness; and (2) we should remand for reconsideration his withholding of removal and CAT claims because the BIA's adverse credibility finding was not supported by reasonable, substantial, and probative evidence. However, under controlling precedent, we lack jurisdiction to review his petition for asylum. As for his claims for withholding of removal and CAT relief, we deny the petition because Laguna Rivera has not established a well-founded

fear of persecution. Accordingly, we dismiss the petition for review in part and deny it in part.

## I.

When reviewing a BIA determination that relied on the IJ's decision and reasoning, "we review the [IJ]'s decision to the extent that the BIA found the [IJ]'s reasoning was supported by the record, and we review the BIA's decision as to issues on which it rendered its own opinion and reasoning." *Hasan-Nayem v. U.S. Att'y Gen.*, 55 F.4th 831, 842 (11th Cir. 2022). Moreover, we review the agency's legal conclusions *de novo* and its factual determinations under the "substantial evidence" test. *Id.* Under the substantial evidence test, "we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* (citation and internal quotation marks omitted). Thus, we will not disturb the agency's findings of fact "so long as they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citation and internal quotation marks omitted). This standard is high: we will not reverse a finding of fact unless the record compels reversal. *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). The agency's credibility determinations are factual findings that are reviewed under the substantial evidence test. *Hasan-Nayem*, 55 F.4th at 842. "As to credibility determinations, [t]he trier of fact must determine credibility, and this court may not substitute its judgment for that of the BIA and [IJ] with respect to credibility findings." *Id.* at 843 (citation and internal quotation marks omitted).

Under the prior panel precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by us sitting *en banc*. *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). The prior panel precedent rule applies even if the prior panel did not have the benefit of hearing a particular argument on an issue. *United States v. Moore*, 22 F.4th 1258, 1268 (11th Cir. 2022).

## II.

First, recent precedent has made it clear that we lack jurisdiction over Laguna Rivera's challenge to the BIA's determination that his application for asylum was untimely, and that there were no "changed or extraordinary circumstances" to excuse its untimeliness. As the BIA explained, Laguna Rivera's asylum application should have been filed within one year of his 2006 arrival to the United States. However, Laguna Rivera did not seek asylum until 2014, when he was placed in removal proceedings, some eight years *after* he arrived in the United States. This meant that Laguna Rivera had to establish that "changed or extraordinary circumstances" excused the untimely filing of his application. But, as the agency found, Laguna Rivera offered no adequate explanation, and instead, the delay appeared to result from his own inaction. Laguna Rivera attempts to challenge this determination on appeal; as we explain, we are unable to review it.

An application for asylum must be filed "within 1 year" after the date of the applicant's arrival in the United States. 8 U.S.C.

§ 1158(a)(2)(B). The agency "may" nonetheless consider a late-filed application for asylum if the applicant "demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the [1 year limit]." *Id*. § 1158(a)(2)(D). Section 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General" concerning the timeliness of an asylum application or the existence of changed or extraordinary circumstances. *Id*. § 1158(a)(3); *see also Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003) (noting that § 1158(a)(3) "divests our Court of jurisdiction" to review a decision concerning whether an applicant "complied with the one-year time limit or established [changed or] extraordinary circumstances that would excuse his untimely filing").

In the REAL ID Act, passed in 2005, Congress restored our jurisdiction to review constitutional claims or questions of law irrespective of any jurisdictional bar in the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1252(a)(2)(D) (providing that nothing in the INA "which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals . . . ."). Soon after the REAL ID Act was passed, we decided *Chacon-Botero v. United States Attorney General*, 427 F.3d 954 (11th Cir. 2005). There, we held that "[t]he timeliness of an asylum application is not a constitutional claim or question of law covered by the Real ID Act's changes." *Id*. at 957. Rather,

the timeliness issue is a "discretionary or factual determination[]" that "continue[s] to fall outside the jurisdiction of the court of appeals entertaining a petition for review" notwithstanding the REAL ID Act.  *Id*. (quoting *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005)); *see also Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007) (following *Chacon-Botero*).

Two recent Supreme Court cases have revisited and clarified the scope of the REAL ID Act's jurisdiction-restoring provision -- *Guerrero-Lasprilla v. Barr*, 589 U.S. 221 (2020), and *Wilkinson v. Garland*, 601 U.S. 209 (2024).  In *Guerrero-Lasprilla*, the Supreme Court addressed the courts' jurisdiction to review the BIA's refusal to equitably toll the deadline to reopen an immigration case on the ground that the applicants had failed to demonstrate the requisite due diligence.  589 U.S. at 225–26.  The Supreme Court held that this was a question of law the courts had jurisdiction to review, explaining that the term "'questions of law' includes the application of a legal standard to established facts."  *Id*. at 234.  In *Wilkinson*, the Court expanded on *Guerrero-Lasprilla* when it considered the exceptional and extremely unusual hardship ground for cancellation of removal.  601 U.S. at 221 (citing 8 U.S.C. § 1229b(b)(1)(D)).  This time, the Supreme Court held that the question of whether a petitioner's qualifying relative would suffer "exceptional and extremely unusual hardship" if the petitioner were deported "is a legal standard that an IJ applies to facts" and is therefore, "inescapably, a mixed question of law and fact" reviewable by the courts under the REAL ID Act.  *Id*.

Since *Wilkinson*, our Court has tackled whether the Supreme Court's recent decisions abrogated *Chacon-Botero*, and has squarely held that they do not. In *A.P.A. v. United States Attorney General*, a panel of this Court reasoned that *Guerrero-Lasprilla* "made it critical for courts to accurately classify the INA's provisions as either (1) supplying a legal standard to be applied to a set of facts, (2) posing a question of fact, like one you'd expect a jury to answer in a court case, or (3) identifying a discretionary judgment call to be made by the Attorney General." 104 F.4th 230, 238 (11th Cir. 2024). In the REAL ID Act, Congress restored the courts' jurisdiction only for the first category: applying a legal standard to a set of facts. *Id.* We decided that neither *Guerrero-Lasprilla* nor *Wilkinson* undermined *Chacon-Botero*. "[T]he core holding of *Chacon-Botero* is that the existence of changed circumstances and the reasonableness of the applicant's delay [in filing an asylum application] are discretionary judgment calls left to the Attorney General. No intervening precedent undermines that conclusion." *Id.* at 240. In fact, we said that *Wilkinson* supports *Chacon-Botero*'s conclusion because in *Wilkinson*, the Supreme Court gave four examples of statutes that created a discretionary, unreviewable standard, two of which "use *exactly the same* operative language as Section 1158(a)(2)(D)—'if it is established *to the satisfaction of* the Attorney General.'" *Id.* at 241 (quoting *Wilkinson*, 601 U.S. at 224).

There is no question that *A.P.A.* binds us. It is a published decision of a prior panel, addressing the identical question in front of us—whether *Guerrero-Lasprilla* and *Wilkinson* abrogate *Chacon-Botero*, thereby rendering reviewable the agency's determination of

the timeliness of an asylum application under § 1158(a)(2). *See Archer*, 531 F.3d at 1352. We are bound to conclude that we lack jurisdiction to review the agency's determination that Laguna Rivera's asylum application was untimely. Thus, we dismiss his petition insofar as it challenges the denial of asylum.

## III.

We also are unpersuaded by Laguna Rivera's claim that the BIA's adverse credibility finding against him is not supported by substantial evidence. To obtain withholding of removal to a particular country, the applicant bears the burden to establish that his "life or freedom would be threatened in that country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Absent past persecution, the applicant must show that it is more likely than not that he would be persecuted or tortured upon his return to the country in question. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364–65 (11th Cir. 2011). To obtain protection under the CAT, "the applicant must establish that he will more likely than not be tortured in the country of removal." *Jathursan v. U.S. Att'y Gen.*, 17 F.4th 1365, 1375 (11th Cir. 2021). "Torture" is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . for any reason based on discrimination of any kind, when such pain or suffering is inflicted by . . . [a] person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Both withholding of removal and CAT protection require an applicant to show, among other things, that he is "unable or

unwilling" to return to his home country "because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A)—in other words, that he is entitled to a claim of asylum on the merits. *See Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1288 n.4 (11th Cir. 2005) (explaining that if an applicant "fail[s] to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under [the] CAT"). An applicant who establishes past persecution "is presumed to have a well-founded fear of future persecution." *Murugan v. U.S. Att'y Gen.*, 10 F.4th 1185, 1193 (11th Cir. 2021). "But absent a showing of past persecution, [he] must show that he has a subjectively genuine and objectively reasonable fear of future persecution if returned to his home country." *Id.* (citation and internal quotation marks omitted). The applicant can satisfy the objective prong by providing "specific, detailed facts showing [that he has] a good reason to fear that he . . . will be *singled out* for persecution," or, in the alternative, by proving "a pattern or practice of persecuting a group of persons similarly situated to [himself]." *Id.* (citations and internal quotation marks omitted). "To prove the existence of a pattern or practice of persecution," he "must prove that the mistreatment of persons similarly situated is 'extreme and pervasive.'" *Id.* (quoting *Lingeswaran v. U.S. Att'y Gen.*, 969 F.3d 1278, 1291 (11th Cir. 2020)).

To be eligible for either a withholding of removal or CAT relief, "[t]he testimony of the applicant may be sufficient to sustain the applicant's burden without corroboration, but only if the

applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also* 8 U.S.C. § 1231(b)(3)(C); 8 C.F.R. § 208.16(c)(2). If, however, the IJ explicitly determines that the applicant lacks credibility, the IJ must provide "specific, cogent reasons" for the finding. *Forgue*, 401 F.3d at 1287. The burden then shifts back to the applicant to show that the credibility determination was either not supported by "specific, cogent reasons" or was not based on "substantial evidence." *Id.* (internal quotation marks omitted).

An IJ may base a credibility finding on the totality of the circumstances, including: (1) the demeanor, candor, or responsiveness of the applicant; (2) the inherent plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; and (5) the consistency of the statements with other record evidence, including State Department reports. 8 U.S.C. § 1158(b)(1)(B)(iii). An adverse credibility determination may be based on inaccuracies, inconsistencies, and falsehoods, regardless of whether they relate to the "heart" of the applicant's claim. *Id.*

In this case, the BIA upheld the IJ's denial of Laguna Rivera's application because, "[a]s outlined in the [IJ]'s decision, [Laguna Rivera] did not show that there was any relationship between the harm to his relatives in the 1990's and his claim before the Immigration Court, nor did he relate any particular instance in which he

was directly threatened." Moreover, the BIA accepted the IJ's reasoning and determination that Laguna Rivera had "embellished key aspects of his story and that his claim is not believable" based on the "inconsistencies[] and omissions identified in the record." In other words, the IJ and BIA determined that Laguna Rivera failed to establish a well-founded fear of future persecution necessary for a claim of asylum: his allegations about the persecution of his relatives many years ago did not show he personally had "a good reason to fear that he . . . will be *singled out* for persecution," nor did he establish a "pattern or practice of persecution." *Murugan*, 10 F.4th at 1193 (citation and internal quotation marks omitted).

This determination is supported by substantial evidence. Laguna Rivera did not allege that he had ever been subject to past persecution. Instead, he attempted to establish a well-founded fear of future persecution based on his allegations that: (1) his grandfather, uncle, and partner's father had been persecuted in Nicaragua for their political activities in the 1990s and earlier; (2) he had been politically active in Nicaragua in the 1990s; (3) his brother was beaten in 2018 by Nicaraguan paramilitaries who asked about Laguna Rivera's whereabouts; and (4) he heard a rumor that Nicaraguans reentering the country from the United States are tortured.

But this body of evidence does not compel us to find that Laguna Rivera had a well-founded fear of persecution. The agency found that the bulk of his claims of persecution of his family members in Nicaragua were so "dated" they could not support an inference of future persecution. Although an applicant can support his

fear of persecution by reference to the persecution of his family, he must explain convincingly why he would receive the same treatment. *See Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1176 (11th Cir. 2008) ("Even if we were to infer that Djonda's brothers were persecuted, we would still deny Djonda relief because the record does not compel the conclusion that Djonda has a well-founded fear that he will be treated like his brothers."). It is more difficult to show a link between the persecution of others and the risk of persecution to the applicant if the persecution of others happened a long time ago. *See Mendoza*, 327 F.3d at 1288.

Other than the claimed beating of his brother in 2018, all of the examples of persecution in Nicaragua, offered by Laguna Rivera, came from the persecution of other members of his family and of his partner's father in the 1990s or earlier—more than 25 years ago. It's also worth noting that Laguna Rivera remained in Nicaragua until 2006, *sixteen years* after his grandfather's death, and that he has several close family members (both parents, two brothers, and two children) still living in Nicaragua. As we've said before, it is reasonable to be skeptical of an applicant's claim that he will suffer harm because he is part of a certain family if other members of the same family are able to live in the country without being harmed. *See id.* (also noting that the applicant's father, "the purported focus of the guerillas' persecution," was able to return to the country of relocation without harm).

Next, the agency found Laguna Rivera's story surrounding his brother's beating in 2018 by Nicaraguan paramilitaries to be

"embellished." Among other things, it found not credible the claim that the paramilitaries would ask his brother about Laguna Rivera's whereabouts in 2018 when Laguna Rivera was last politically active around 1998. This is especially so since Laguna Rivera offered no example of anything that occurred between the late 1990s and 2018 that would tend to show that Ortega's government in Nicaragua cared about him. And even if the agency had credited Laguna Rivera's testimony about his brother, Laguna Rivera never said that the paramilitaries threatened to do anything specific to him if he returned. While we've given credence to an applicant's evidence that his "uncle was interrogated about [his] whereabouts and told that [he] would be imprisoned when he was found," we've nevertheless found that evidence like this does not *compel* a finding that the applicant reasonably feared persecution. *Djonda*, 514 F.3d at 1176. We reached that conclusion in *Djonda* because "there [wa]s no evidence that [the applicant's] uncle was told by the government that [he] would be imprisoned for an extended period of time"—*i.e.*, that his threatened detention would amount to persecution. *Id.* The same holds true here.

Moreover, we are not convinced that the political activity that Laguna Rivera took part in during the late 1990s was the sort of activity that would likely put him personally on the government's radar. Laguna Rivera said that he held no formal position in any political party, and that he would just do tasks he was instructed to do, like handing out flyers, writing down the names of everyone in the community, or distributing food. Notably, he observed that *everyone* in his community at the time was part of this

same loose political group and that everyone was against the government. This is not the kind of political involvement we've indicated before would likely lead to a government keeping track of someone for decades after they were politically involved. *See id.* (noting, in support of a finding that the applicant lacked a well-founded fear of persecution, that the applicant's brother, who was persecuted, "occupied a prominent leadership position within the [opposition political party in Togo], in contrast with [the applicant], who not only did not occupy a leadership position, but had not participated in any large demonstrations in the year between his detention and his flight from Togo"). Further, the agency was justifiably unmoved by the rumor that Nicaraguans returning to Nicaragua from the U.S. were tortured because, as the IJ pointed out, Laguna Rivera had not provided any evidence that this was true. Indeed, Laguna Rivera described this only as a "rumor that has been circulating."

To the extent Laguna Rivera claims that the IJ improperly conflated immigration standards when the IJ found that he "failed to establish any credible nexus between the unfortunate passing of his grandfather in 1990 and any past persecution of himself or his family," we disagree. The IJ was not using the term "credible" in this context to assess Laguna Rivera's credibility generally and across the board, nor was the IJ using the term "nexus" to assess whether Laguna Rivera had been persecuted because of a protected status, a question that may arise in immigration cases. *See* 8 U.S.C. § 1158(b)(1)(B)(i). Rather, the IJ's decision makes it clear that Laguna Rivera had not convincingly established that he would be

persecuted in the first place.  In so doing, the IJ was addressing whether Laguna Rivera could establish a well-founded fear of persecution—which is at the core of the withholding and CAT determinations.  *See Murugan*, 10 F.4th at 1193, 1196.

Nor are we persuaded by Laguna Rivera's argument that the corroborating letters offered by his family and friends were not vague.  For one thing, the agency considered Laguna Rivera's corroborating letters, as it was required to do.  *See Forgue*, 401 F.3d at 1287 (noting that while "an adverse credibility determination alone may be sufficient to support the denial of an asylum application," an adverse credibility determination "does not alleviate" the agency's duty to consider the rest of the evidence produced by an applicant).  And in reviewing those letters, the agency said that the letters did no more than reiterate Laguna Rivera's claims of persecution, which the agency had already found to be an insufficient basis to support a well-founded fear of persecution.  The agency could reasonably determine that these letters did not rehabilitate his otherwise deficient claims.  Nothing we see would compel the obverse conclusion.

Finally, Laguna Rivera challenges the IJ's credibility finding because he says the IJ was required to, but did not, confront him with the reasons leading the IJ to disbelieve his account before making the adverse credibility finding.  But even if the IJ were required to so—and we do not reach this issue today—we cannot "consider claims that have not been raised before the BIA."  *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006)

(citation and internal quotation marks omitted), *overruled on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023). This is because the exhaustion requirement found in 8 U.S.C. § 1252(d)(1) precludes review of a claim that was not presented to the BIA. *Id.* The petitioner must have argued "the core issue now on appeal" before the BIA, and although the exhaustion requirement does not mandate well-developed arguments and precise legal terminology, it requires the petitioner to "provide information sufficient to enable the BIA to review and correct any errors below." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (citation and internal quotation marks omitted). The Supreme Court recently determined that 8 U.S.C. § 1252(d)(1)'s exhaustion requirement is "a non-jurisdictional," "claim-processing rule," and, therefore, "is subject to waiver and forfeiture," *Santos-Zacaria*, 598 U.S. at 419–23, but we have clarified that this claim-processing rule is "generally applied where . . . it has been asserted by a party," *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023).

The government squarely has argued that Laguna Rivera did not raise the claim before the BIA that he should have been given the opportunity to explain inconsistencies in his applications for the IJ, and we agree. Accordingly, he did not exhaust the issue and we will not review it. *Amaya-Artunduaga*, 463 F.3d at 1250.

In short, substantial evidence supports the agency's conclusion that Laguna Rivera did not have a well-founded fear of future persecution. A fair reading of this record does not "support, much less compel, reversal of the IJ's [and BIA's] ruling." *Mendoza*, 327

F.3d at 1288.  It also follows that because Laguna Rivera could not convincingly establish a well-founded fear of persecution sufficient to show eligibility for asylum, he necessarily cannot show eligibility for withholding of removal or CAT protection.  *Forgue*, 401 F.3d at 1288 n.4 ("Because [the petitioner] has failed to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT.").  We deny the petition for review of the withholding of removal and the CAT claims.

**PETITION DISMISSED IN PART AND DENIED IN PART.**

23-12398                JORDAN, J., Concurring                1

JORDAN, Circuit Judge, Concurring:

I join Judge Marcus' opinion for the court in full. I don't believe *A.P.A. v. United States Attorney General*, 104 F.4th 230, 240–41 (11th Cir. 2024), was correctly decided, and I think the better view is that *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 234–36 (2020), and *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024), abrogated *Chacon-Botero v. United States Attorney General*, 427 F.3d 954, 957 (11th Cir. 2005). But *A.P.A.* is controlling and binds us here.