**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-13287

Non-Argument Calendar

————————————

SAMUEL VALERIO-ESTRADA,

*Petitioner,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A089-967-157

————————————

Before NEWSOM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Samuel Valerio-Estrada petitions for review of an order of the Board of Immigration Appeals ("BIA") that affirmed an order of an Immigration Judge ("IJ") denying his application for

cancellation of removal under the Immigration and Nationality Act
("INA") § 240A(b), 8 U.S.C. § 1229b(b).  After careful review, we
deny the petition for review.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Valerio-Estrada, a citizen of Mexico, entered the United
States without inspection in March 1999.  In 2012, the Department
of Homeland Security served him with a notice to appear that
charged him as removable under INA § 212(a)(6)(A)(i), 8 U.S.C.
§ 1182(a)(6)(A)(i), as a noncitizen present in the United States with-
out being admitted or paroled.  He later conceded, through coun-
sel, that he was removable as charged.  A removable noncitizen
may obtain "discretionary relief" under several different provisions
of the INA.  *Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1204
(11th Cir. 2025) (quoting *Wilkinson v. Garland*, 601 U.S. 209, 212
(2023)).  "One [such] option is to convince an immigration judge to
'cancel' his removal," through an application for "cancellation of
removal."  *Id.*; *see* INA § 240A(b), 8 U.S.C. § 1229b(b).  Valerio-Es-
trada timely filed such an application in 2015.  The evidence sub-
mitted in support of that application showed the following.

Valerio-Estrada lived in DeFuniak Springs, Florida with his
five U.S. citizen children, who, at the time of the IJ hearing, were
between 2 and 12 years old.  He was 40 years old at the time of the
hearing on the merits of his application.  He had entered the United
States in 1999 and had worked several jobs since then, including
carpentry and landscaping work.  He testified that he was the sole
economic provider for his children, his parents, and his wife—who

also did not have legal status in the country—was not employed and took care of the children.  His children only spoke English and had never visited Mexico.  If he were removed, his children and his wife would move with him to Mexico.  Valerio-Estrada explained that his children were healthy, but his parents were suffering from health concerns.

Valerio-Estrada also took care of his elderly parents who lived with him in DeFuniak Springs.  His father was a 78-year-old U.S. citizen, and his mother was a 64-year-old legal permanent resident of the United States.  Valerio-Estrada's father suffered from diabetes and high blood pressure, had undergone cataract surgery, and was taking a variety of medications.  His father could not walk well due to a knee surgery and his poor eyesight, so he depended on Valerio-Estrada for assistance.  His mother, on the other hand, had undergone surgery for a benign tumor and suffered from various medical conditions, including essential hypertension, obesity, hyperlipidemia, and a strain of her neck muscles.  Because of these medical issues, Valerio-Estrada's parents required "constant attention."  Valerio-Estrada helped his parents by taking them to medical appointments and paying for their medical care.

Valerio-Estrada testified he was the sole provider for his children and his parents.  He had six siblings in the United States, but they were not in frequent contact.  He believed none of them would take care of his parents if he were removed to Mexico.  That said, he conceded that one of his sisters helped him with his parents every three or four months and that all six of his siblings in the

United States lived in the region of Florida where he and his parents lived.  He also explained he did not have family in Mexico who could assist him if he were removed.  He had two sisters and a brother in Mexico, but his two sisters were not employed and his brother only did seasonal work on a ranch.

Valerio-Estrada submitted various information about the conditions in Mexico.  This evidence discussed poverty, crime, and limited access to healthcare and educational opportunities in Mexico, and it described how those issues affected children specifically.[1]  Valerio-Estrada also testified that he was from a particularly impoverished region in Mexico where there were limited educational opportunities.  If he was removed, he explained, he would work "in the fields," and be paid 100 pesos a day; or approximately $10 dollars.  He testified that $10 a day was insufficient to provide for his family, and there was not enough work for him to make $10 a day for each weekday.

In 2012, Valerio-Estrada pled *nolo contendere* to state charges for creating, using, or possessing with intent to use, counterfeit or fictitious personal identification information.  He received a sentence of three years' probation for his offense, with the possibility of early termination after two years.  He explained that this arrest

---

[1] Some of this evidence is dated.  For instance, Valerio-Estrada submitted a report on "Children's Health in Mexico" that was last updated in December 2000.  In any event, we consider it because the agency appears to have done so.

and conviction was for working with a social security number he had purchased which was not his own.

Valerio-Estrada's mother and father each testified in support of his application. His mother explained that she had high blood pressure, high cholesterol, and a "cardiac issue," and Valerio-Estrada brought her to her appointments for these conditions and paid for her care. She thought she might immigrate with her son to Mexico so she could be with her granddaughters because she "could not live without them." Even so, she noted that there were not any facilities where she could receive medical care in Mexico. Valerio-Estrada's father explained he had diabetes, high blood pressure, and high cholesterol, and he took medications for each of his conditions. He used a cane to walk because of his knee surgery, but the surgery and diabetes caused him pain and made it difficult for him to walk. Valerio-Estrada took him to his medical appointments and paid for his housing. Valerio-Estrada's father did not testify as to whether he would move to Mexico if Valerio-Estrada was returned.

After the testimony and evidence were presented, the government argued that Valerio-Estrada lacked sufficient good moral character, as required for cancellation relief. INA§ 240A(b)(1)(B), 8 U.S.C. § 1229b(b)(1)(B). It also argued that the hardship Valerio-Estrada's family members would suffer from Valerio-Estrada's removal were similar to "those that would be suffered by anybody else in his position," and was thus not "exceptional" or "unusual," as necessary to merit cancellation relief. Valerio-Estrada contested

the government's characterization of his moral character and ar-
gued he was dedicated to his family and had been attempting to
provide for them when he improperly obtained a social security
number.  He also argued that the totality of the circumstances es-
tablished that his family members would suffer the requisite hard-
ship, and he pointed to BIA precedent, specifically *Matter of Recinas*,
23 I. & N. Dec. 467 (BIA 2002), as presenting "factual similarities"
with his case and justifying relief.

    In an oral opinion, the IJ denied Valerio-Estrada's applica-
tion.  After summarizing the law relevant to the statutory criteria
and the relevant facts, the IJ concluded that Valerio-Estrada pro-
vided inconclusive proof about his good moral character because it
was unclear whether or not he had completed his term of proba-
tion for his fraudulent personal identification conviction.[2]  Next, it
found that Valerio-Estrada failed to show that his removal would
cause exceptional and extremely unusual hardship to his qualifying
relatives under BIA precedent.  The IJ explained that relevant fac-
tors included the ages, health, and circumstances of the qualifying
relatives; whether the qualifying relative was a child with very se-
rious health issues or compelling special needs in school; whether
the qualifying relatives were elderly parents who were solely de-
pendent on the applicant for support; and whether the applicant

---

[2] The IJ also reasoned that, even if Valerio-Estrada had proven that he pos-
sessed good moral character, his conviction would go against him with respect
to considering whether to grant his application if the IJ found that he estab-
lished statutory eligibility.  The agency did not ultimately resolve the applica-
tion on this step, so it is not discussed further.

had family and community ties in the United States and abroad. The IJ also noted that all factors are viewed in the aggregate.

As to Valerio-Estrada's children, the IJ noted that they were all healthy, and there was no evidence that they had any compelling special needs in school. It acknowledged the evidence about conditions in Mexico but concluded that this evidence did not show that Valerio-Estrada's children would suffer exceptional and extreme hardship if he was removed. It also stated that the children would not be separated from their father because Valerio-Estrada had testified that his children would go with him to Mexico if he was removed. It also found insufficient evidence to show Valerio-Estrada would be unable to find employment and provide for his family in Mexico, concluding that the evidence showed hardship that ordinarily resulted from removal of parents with children who are U.S. citizens.

As to Valerio-Estrada's parents, the IJ stated that there was no evidence that his mother was continuing treatment based on her surgery, and otherwise, there were no "test reports of diagnosis and prognosis of any very serious aliments of the parents for which they are receiving treatment and continue to receive treatment." It also explained that, although Valerio-Estrada had testified that he provided financial support to his parents, his father received Medicaid and Social Security payments, and there was no evidence as to how much of his parents' medical expenses Valerio-Estrada paid. It found Valerio-Estrada had failed to show that he was the sole caretaker for his parents because there was no evidence that his

siblings who lived in the United States would not and could not step in and take care of their parents if he was removed.  Based on those facts, the IJ concluded Valerio-Estrada had not shown his removal would result in exceptional and extremely unusual hardship to his parents, adding that his mother had testified that she would return to Mexico with him and her grandchildren if he was removed.  For those reasons, the IJ found Valerio-Estrada failed to establish his statutory eligibility for cancellation relief.

Valerio-Estrada administratively appealed the IJ's decision. His brief on appeal presented several arguments, but, at bottom, he argued that he had established each of the statutory requirements for cancellation relief.  As to the requirement that he prove a qualifying family member will suffer exceptional and extremely unusual hardship, Valerio-Estrada argued that his case was similar to *Matter of Recinas*, and the BIA should reach the same result as it did in that case.  He argued that the youth of his children and the old age and medical conditions of his parents weighed in favor of a finding of hardship.  He highlighted evidence about his mother's medical conditions and her testimony showing that she would return to Mexico with him if he were removed.  He also reiterated that his father required constant care.  Based on these facts, he asserted that the IJ had clearly erred in concluding his parents would not suffer extreme hardship if he was removed.  He also argued that the IJ failed to consider hardship cumulatively, as BIA precedent required.

23-13287                 Opinion of the Court                              9

As related to his children, Valerio-Estrada argued that the IJ applied the wrong standard by erroneously requiring him to prove that he had a child with a serious health issue or compelling special needs in school.  He argued that his facts—including that his children were born and raised in the United States, spoke only English, and would have a much lower standard of living and lack of economic opportunity in Mexico if they were removed—were sufficient to establish extreme hardship.  Finally, he argued that the unavailability of alternative methods for immigrating to the United States and the length of his relatives' residence in the United States further supported his claim that his family members would suffer hardship.

Valerio-Estrada also submitted new evidence in support of his administrative appeal, which showed that he had successfully completed his term of probation and that he now had a social security number and employment authorization documents.[3]  He argued this evidence showed he had good moral character, satisfying another element of the cancellation statute.  DHS, in response to Valerio-Estrada's administrative appeal, moved for summary affirmance.  *See* 8 C.F.R. § 1003.1(d)(2).  It argued that the IJ was clearly correct that, even though Valerio-Estrada's family members would suffer some hardship if he was removed, they would not suffer exceptional and extremely unusual hardship as required by statute.

_____

[3] The BIA would later construe these new documents as a motion to remand. Valerio-Estrada does not challenge this re-characterization in his petition for review, so we operate on the same assumption.

In September 2023, a single judge of the BIA dismissed Valerio-Estrada's administrative appeal. The BIA adopted and affirmed the IJ's finding that Valerio-Estrada had not shown that his removal would result in exceptional and extremely unusual hardship to a qualifying relative, and it reasoned that the IJ had not clearly erred in assessing the hardship his five children and two parents would face upon his removal.

The BIA rejected Valerio-Estrada's argument that the IJ had improperly required him to prove that he had a qualifying child with a serious health issue by explaining, instead, that the IJ had simply considered his children's health and educations as relevant factors in its overall assessment of the hardship requirement. It also held that the IJ had properly considered the record evidence in the aggregate and with a forward-looking view, as BIA precedent required. The BIA explained, moreover, that it found Valerio-Estrada's argument that his situation was analogous to *Matter of Recinas* unpersuasive. It reasoned that the applicant in *Matter of Recinas* was the sole provider for her six children and her entire family resided in the United States. On the contrary, Valerio-Estrada "ha[d] a partner who assists him with the raising of his children, and he has siblings in both the United States and Mexico." Because the BIA concluded that Valerio-Estrada had not established his eligibility for cancellation under the statutory criteria, it declined to address his remaining arguments. For the same reason, it rejected Valerio-Estrada's construed motion to remand, explaining that he "ha[d] not shown how his evidence, which" addressed his "good moral character, would likely change the outcome of the

case in light of" its ruling on hardship.  Valerio-Estrada timely petitioned for review.

## II. SCOPE & STANDARDS OF REVIEW

We review legal issues *de novo*.  *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289 (11th Cir. 2006).  We also review our jurisdiction *de novo* and *sua sponte*.  *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1321 (11th Cir. 2021), *overruled in part on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411, 419–23 & n.2 (2023).[4]  When we have jurisdiction to do so, "[w]e review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision." *Gonzalez v. U.S. Att'y. Gen.*, 820 F.3d 399, 403 (11th Cir. 2016), *abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024).  In deciding whether to uphold the BIA's decision, we are limited to the grounds upon which the BIA relied.  *Id.*; *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1369 (11th Cir. 2011).  To the extent that the BIA agrees with and adopts the IJ's reasoning, however, we may review the IJ's decision as well.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

"[W]e lack jurisdiction to review pure findings of fact" regarding cancellation of removal under INA § 240A(b), 8 U.S.C. § 1229b(b). *Lopez-Martinez*, 149 F.4th at 1211.  Yet, whether a given

---

[4] In 2023, the Supreme Court held that a petitioner's obligation to exhaust administrative remedies, found in INA § 242(d)(1), 8 U.S.C. § 1252(d)(1), is a claims-processing rule, not a jurisdictional limitation, and is subject to waiver and forfeiture, *Santos-Zacaria*, 598 U.S. at 419–23 & n.2, overruling our prior cases that held the contrary.

set of facts satisfies the statutory hardship component of the cancellation of removal statute, INA § 240A(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D), "presents a 'mixed question' of law and fact," that we have jurisdiction to review. *Id.* at 1208 (quoting *Wilkinson*, 601 U.S. at 222). Because this mixed question of law and fact is "'primarily factual,'" our review is for substantial evidence. *Id.* at 1211 (quoting *Wilkinson*, 601 U.S. at 222, 225).[5] When we review for substantial evidence, we will affirm the agency's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (*en banc*) (quoting *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1283–84 (11th Cir. 2001)). In doing so, "we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* at 1029. "This standard is high: we will not reverse a finding of fact unless the record compels reversal." *Laguna Rivera v. U.S. Att'y Gen.*, 130 F.4th 915, 919 (11th Cir. 2025) (citing *Adefemi*, 386 F.3d at 1026–27).

We review the BIA's denial of motions to remand, reopen, or to reconsider for abuse of discretion. *Chacku v. U.S. Att'y Gen.*, 555 F.3d 1281, 1286 (11th Cir. 2008); *Assa'ad v. U.S. Att'y Gen.*, 332

---

[5] The government's brief, filed before *Lopez-Martinez*, contended that the proper standard of review is abuse of discretion. Conversely, Valerio-Estrada originally argued that our review was *de novo*. Because the issue was resolved in *Lopez-Martinez*, we need not revisit it.

F.3d 1321, 1340–41 (11th Cir. 2003).[6]  When we review for abuse of discretion, we ask whether the BIA exercised its discretion arbitrarily or capriciously.  *Ferreira v. U.S. Att'y Gen.*, 714 F.3d 1240, 1243 (11th Cir. 2013).  The BIA can abuse its discretion by making an error of law, or by failing to follow "its own precedents without providing a reasoned explanation for doing so."  *Id.*

## III. DISCUSSION

An application for cancellation of removal "proceeds in two steps."  *Lopez-Martinez*, 149 F.4th at 1204 (quoting *Wilkinson*, 601 U.S. at 212).  First, the immigration judge must assess whether the applicant is eligible under the statutory criteria.  *Id.*; *see* INA § 240A(b)(b)(1)(A)–(D), 8 U.S.C. § 1229b(b)(1)(A)–(D).  Second, if the applicant satisfies those criteria, an immigration judge "decides whether to exercise his discretion favorably and grant the noncitizen relief."  *Lopez-Martinez*, 149 F.4th at 1204 (quoting *Wilkinson*, 601 U.S. at 212–13); *see* INA § 240A(b)(b)(1), 8 U.S.C. § 1229b(b)(1) (noting that the "Attorney General *may* cancel removal" to a noncitizen who satisfies the statutory criteria (emphasis added)).  In

---

[6] When "a motion to remand seeks to introduce evidence that has not previously been presented, it is generally treated as a motion to reopen . . . ."  *Chacku*, 555 F.3d at 1286; *see Al Najjar*, 257 F.3d at 1301.  We note that some of these cases rely on since superseded regulations.  *E.g.*, *Al-Najjar*, 254 F.3d at 1301 (citing 8 C.F.R. § 3.1(d) (1999)).  No party suggests that this undermines these holdings and, in any event, BIA caselaw preserves the same distinction between motions to remand and to reopen, so we apply the same here.  *See Matter of Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992), *abrogated in part on other grounds by In Re L-O-G-*, 21 I. & N. Dec. 413, 419–20 (BIA 1996) (*en banc*).

this case, the agency did not reach the second step, it rejected Valerio-Estrada's application on the statutory criteria. In fact, the BIA addressed only one of the statutory criteria; it concluded that Valerio-Estrada failed to "'establish[] that removal would result in exceptional and extremely unusual hardship to [his] spouse, parent, or child,' who is a U.S. citizen or lawful permanent resident." *Wilkinson*, 601 U.S. at 213 (quoting INA § 240A(b)(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D)). Accordingly, our discussion centers on this element.[7]

Valerio-Estrada argues, primarily, that the agency erred by failing to follow its own precedent when it rejected his application. As he did before the agency, he focuses much of his briefing on *Matter of Recinas*. While he does not separate them out in his briefing, his argument raises two questions with different standards of review, as laid out above. The first question is whether the BIA applied a legal standard different from the standard established in BIA precedent. This is a legal question which we review *de novo*. *Lopez-Martinez*, 149 F.4th at 1213 (addressing a similar argument). The second question is whether the record establishes the requisite

_____

[7] In its initial brief, the government argued that we lacked jurisdiction over Valerio-Estrada's petition for review. Valerio-Estrada has maintained that we have jurisdiction. Our precedent has since resolved this issue. After *Wilkinson*, we have jurisdiction to review "immigration authorities' conclusion that an applicant for cancellation of removal hasn't satisfied [INA § 240A(b), 8 U.S.C.] § 1229b(b)(1)(D)'s exceptional-and-extremely-unusual-hardship standard." *Lopez-Martinez*, 149 F.4th at 1205. We lack jurisdiction to review purely factual arguments in this context, but we do not read Valerio-Estrada's briefing to raise any purely factual argument.

"exceptional and extremely unusual hardship." This presents a mixed question of law and fact, which we review for substantial evidence. *Id.* at 1211. We address these two issues separately. *See id.*; *see also Samayoa v. Bondi*, 146 F.4th 128, 136–41 (1st Cir. 2025) (taking a similar approach). After resolving those two issues, we turn to Valerio-Estrada's challenge to the denial of his motion to remand, reopen, or reconsider.

### A. The BIA did not err in Denying Valerio-Estrada's Application for Cancellation of Removal.

### i.        The BIA Applied the Correct Legal Standard.

The BIA has addressed the "extremely and unusual hardship" standard in several cases. *See, e.g.*, *Matter of J-J-G-*, 27 I. & N. Dec. 808, 811 (BIA 2020); *Matter of Andazola-Rivas*, 23 I. & N. Dec. 319, 323 (BIA 2002); *Matter of Recinas*, 23 I. & N. Dec. at 468–73; *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56, 60 (BIA 2001) (*en banc*). Collectively, this body of precedent establishes three legal standards relevant to this case. [8]

First, the exceptional and extremely unusual hardship standard is "high," in part because "Congress intended to tighten the hardship standard" the BIA had been applying to previous iterations of the cancellation statute. *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 59; *see also Lopez-Martinez*, 149 F.4th at 1212

---

[8] The parties do not dispute the existence or applicability of these legal standards nor argue that the statutory scheme requires different legal tests. *See Lopez-Martinez*, 149 F.4th at 1211 n.10.

("[c]onditions satisfying [the hardship standard] are 'substantially beyond that which ordinary would be expected to result from the [non-citizen's] removal'" in the ordinary case (citation omitted)). At the same time, BIA precedent also recognizes that a non-citizen "need not show that such hardship would be 'unconscionable.'" *Matter of Recinas*, 23 I. & N. Dec. at 468.  Second, BIA precedent instructs that whether an application shows extremely and unusual hardship is "based on" the agency's "cumulative consideration of all hardship factors . . . ."  *Matter of J-J-G-*, 27 I. & N. Dec. at 811; *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64 (same).  Third, when "a claim is based on the health of a qualifying relative," the BIA requires an applicant to show "[1] that the relative has a serious medical condition and, [2] if he or she is accompanying the applicant to the country of removal, that adequate medical care for the claimed condition is not reasonably available in that country." *Lopez-Martinez*, 149 F.4th at 1211 (alteration adopted) (citation omitted).  Of course, not every claim will rely on the health of a qualifying relative, but the agency, in all cases, considers the age, health, and circumstances of qualifying family members as part of its cumulative review of hardship. *Matter of Recinas*, 23 I. & N. Dec. at 468.

In light of the foregoing, Valerio-Estrada's argument, that the agency erred "by improperly applying the totality of facts" standard, is incorrect.  Both the IJ and the BIA recited and applied the cumulative analysis required by agency caselaw and reasonably applied the legal standards we have just explained. *See Kazemzadeh*, 577 F.3d at 1350 (explaining that where, as here, the BIA adopts the

IJ's opinion, we review both decisions). For instance, the IJ expressly stated that "all hardship factors should be considered in the aggregate" and then analyzed the facts relevant to Valerio-Estrada's citizen "children and also to his parents who are a citizen and a permanent resident, respectively." The BIA, reviewing this decision, correctly found that the IJ "considered the hardship testimony and evidence presented . . . cumulatively" and in a "forward-looking analysis" as BIA precedent required. In light of these statements, we conclude that Valerio-Estrada's legal standard argument fails. *Matter of J-J-G-*, 27 I. & N. Dec. at 811; *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64.

### ii.    Substantial Evidence Supports the Agency's Hardship Determination.

Valerio-Estrada's next argument is that the undisputed facts in the record establish hardship sufficient to satisfy the statutory hardship criteria. Reviewing the decision on this issue only for substantial evidence, we reject his argument in this respect as well.

In *Matter of Recinas*, the BIA found that an applicant successfully met the hardship standard for cancellation of removal. 23 I. & N. Dec. at 473. The applicant in that case was a single mother of six children, without any close relatives in Mexico. *Id.* at 469. The evidence showed the applicant's children had spent their whole lives in the United States and did not speak Spanish well, the children were wholly dependent on the applicant, the applicant depended on her mother for child care, she would struggle to find work in Mexico that also would allow her to provide a

supportive home for her children, and she did not have realistic prospects of lawful immigration to the United States. *Id*. at 470–72. The BIA concluded, based on these facts, the mother's situation was distinct from the facts of two of its prior cases—*Matter of Monreal-Aguinaga* and *Matter of Andazola*—adding that "[t]he cumulative factors present in this case are indeed unusual and will not typically be found in most other cases, where respondents have smaller families and relatives who reside in both the United States and their country of origin." *Id*. at 472–73. The BIA reiterated, however, that "any hardship case ultimately succeeds or fails on its own merits and on the particular facts presented . . . ." *Id*. at 469.

In *Matter of Monreal-Aguinaga*, on the other hand, the BIA affirmed an IJ's denial of cancellation of removal for an applicant with two U.S citizen children and parents who were lawful permanent residents. 23 I. & N. Dec. at 64–65 (noting that the applicant was in good health, there was no evidence that he could not work and support his children in Mexico, he would not be separated from his wife, the applicant's father would go with the applicant to Mexico, the children knew both English and Spanish, and the parents did not have any health problems). Similarly, in *Matter of Andazola*, the BIA found an applicant had not shown the necessary hardship where she had two healthy U.S. citizen children and no relatives in Mexico, one of her children had a close relationship with their grandmother, and she was not married but lived with the father of her children who contributed to the household. 23 I. & N. Dec. at 320–24 (explaining, in addition, that the applicant worried her children would receive worse education in Mexico and she would not

be able to obtain employment in Mexico comparable to her job in the United States). The BIA concluded that the fact pattern presented" was, unfortunately, "a common one, and the hardships . . . as outlined are simply not substantially different from those that would normally be expected upon removal to a less developed country." *Id*. at 324.

In sum, there was substantial evidence to support the agency's ultimate determination. As the BIA has explained, cancellation decisions are incredibly fact-bound and they "succeed[] or fail[] on [their] own merits and on the particular facts presented." *Matter of Recinas*, 23 I. & N. Dec. at 469. The particular facts in this record do not compel a finding that Valerio-Estrada's qualifying relatives will suffer hardship "substantially beyond that which ordinarily would be expected to result from [a non-citizen's] deportation." *Lopez-Martinez*, 149 F.4th at 1212; *see also Laguna Rivera*, 130 F.4th at 919.

Valerio-Estrada contends that, like the applicant in *Matter of Recinas*, he has many children for whom he is the sole financial provider, and his children do not speak Spanish well and are unfamiliar with Mexican culture. Even still, the BIA correctly determined that he is not a single parent like the applicant in *Matter of Recinas*. Moreover, there is no evidence that Valerio-Estrada would have trouble both finding work and taking care of his children in Mexico—as the applicant in *Matter of Recinas* did—given that his wife and mother testified they would travel with him to Mexico. 23 I. & N. Dec. at 469–73. Indeed, Valerio-Estrada testified he would be

able to find some work in Mexico.  Although he testified that work would be limited and would not pay well, and the country reports indicated that Mexico has extreme levels of poverty and limited educational opportunities, that evidence related to the general adverse conditions in Mexico and, while relevant, is insufficient on its own to support a finding of exceptional and extremely unusual hardship.  *See Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64.

In addition, some of the facts in Valerio-Estrada's case also are analogous to those in *Matter of Andazola* and *Matter of Monreal-Aguinaga*, where the BIA denied relief.  *Matter of Recinas*, 23 I. & N. Dec. at 469–73; *Matter of Andazola*, 23 I. & N. Dec. at 320, 324; *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. at 64–65.  For example, in *Matter of Monreal-Aguinaga*, the BIA noted that the applicant would not be separated from his wife and the applicant's father would move to Mexico with the applicant.  *See* 23 I. & N. Dec. at 64–65.  These facts are quite similar to the facts here.  *Adefemi*, 386 F.3d at 1026–27; *cf. Ferreira*, 714 F.3d at 1243.  Moreover, as Valerio-Estrada acknowledged, he has family in Mexico, unlike the applicant in *Matter of Recinas*, and his mother would relocate to Mexico if he was removed.  23 I. & N. Dec. at 469.  As relates to his parents, the agency reasonably found that Valerio-Estrada's father received Medicaid and Social Security benefits that would help him pay for healthcare, and Valerio-Estrada has siblings who live in the United States who can help their parents if Valerio-Estrada is removed.

"It is of course possible that alternative inferences might have been drawn from the record that would have been more

favorable" to Valerio-Estrada and it is true that his removal "may very well cause [his relatives] some—even much—hardship." *Lopez-Martinez*, 149 F.4th at 1212.  Even so, the standard for relief is high and our review is deferential.  *Id.*  For the reasons provided, the agency did not reversibly err in denying Valerio-Estrada's application for cancellation of removal.

### B.  The Agency Did Not Abuse its Discretion in Denying Valerio-Estrada's Motion to Remand.

Finally, Valerio-Estrada challenges the BIA's denial of his motion for remand, arguing that the evidence he submitted bolstered his argument that he was entitled to a favorable exercise of discretion.  Even so, the BIA's opinion is clear that the BIA did not reject Valerio-Estrada's appeal on the discretionary step, but instead on the first step: the statutory criteria.  Therefore, it had no reason to remand for further consideration on the second step.  Generally, "agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."  *INS v. Bagamasbad*, 429 U.S. 24, 25–26 (1976). For this reason, the BIA did not abuse its discretion and we deny the petition for review on this issue as well.  *Chacku*, 555 F.3d at 1286; *Assa'ad*, 332 F.3d at 1340–41; *Ferreira*, 714 F.3d at 1243.

### IV. CONCLUSION

For the reasons we have explained, we deny Valerio-Estrada's petition for review.

**PETITION DENIED.**